# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Donna M.G.,

      Plaintiff,

v.

Martin J. O'Malley, Commissioner
of Social Security Administration,

      Defendant.

Case No. 22-cv-2932 (ECW)

**ORDER**

---

This matter is before the Court on Plaintiff Donna M.G.'s ("Plaintiff") Complaint seeking judicial review of a final decision by the Commissioner denying her application for disability insurance benefits, widow's benefits, and supplemental security income. (*See generally*, Dkt. 1.)  The parties have filed briefs "present[ing] for decision" Plaintiff's request for judicial review of the final decision of the Commissioner of Social Security ("the Commissioner").[1]  (*See* Dkts. 21, 24.)  For the reasons stated below, Plaintiff's request for reversal or remand of the Commissioner's decision (Dkt. 21) is denied and the Commissioner's request that the Court affirm the decision (Dkt. 24) is granted.

---

[1]    As of December 1, 2022, Social Security Actions under 42 U.S.C. § 405(g) are "presented for decision by the parties' briefs," rather than summary judgment motions. Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), Rule 5.

# I.   BACKGROUND

Plaintiff filed a claim for disability insurance benefits, widow's benefits, and supplemental security income on June 26, 2020.  (R. 15, R. 393-412.)[2]  She alleged disability based on her lower back, hearing, arthritis in spine, depression, and arthritis in her hands.  (R. 438.)  Her claims were denied initially and on reconsideration.  (R. 73-144, R. 150-97.)  Plaintiff alleged disability beginning December 31, 2016, but amended her disability onset date to April 1, 2019 through her representative during the hearing before the Administrative Law Judge ("ALJ") on November 19, 2021.  (R. 15, 48, 393.)  On December 9, 2021, the ALJ issued a decision denying Plaintiff's applications (R. 36), and on September 15, 2022, the Appeals Council denied her request for review (R. 1-7), making the ALJ's decision the final decision of the Commissioner.  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).  (Dkt. 1.)

The Eighth Circuit has described the five-step process established by the Commissioner for determining if an individual is disabled as follows:

> (1) whether the claimant is currently engaged in a substantial gainful activity; (2) whether the claimant's impairments are so severe that they significantly limit the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has impairments that meet or equal a presumptively disabling impairment specified in the regulations; (4) whether the claimant's [residual functional capacity ("RFC")] is sufficient for her to perform her past work; and finally, if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that (5) there are other jobs in the national economy that the claimant can perform given the claimant's RFC, age, education and work experience.

*Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

---

[2]    The Administrative Record ("R.") can be found at Docket 14.

Here, the ALJ determined after a hearing that Plaintiff had severe impairments of bilateral hearing loss; bilateral hip degenerative joint disease; lumbar osteoarthritis; and persistent depressive disorder.  (R. 18.)  The ALJ then assessed Plaintiff with the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except lifting and carrying 50 pounds occasionally, 25 pounds frequently, sitting for 6 hours, standing for 6 hours, and walking for 6 hours out of an 8-hour workday. Frequent handling and fingering bilaterally; able to climb ramps and stairs frequently, climb ladders, ropes, or scaffolds frequently, stoop and kneel frequently; limited to a moderate noise environment; a work environment requiring no more than occasional oral communication and would allow captioning when speaking over the telephone; and limited to simple, routine and repetitive tasks that are not performed at a fast production rate pace, such as that found in assembly-line work.

(R. 23.)  Relevant to Plaintiff's appeal: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, [the Social Security Administration has] determine[d] that he or she can also do sedentary and light work."  20 C.F.R. §§ 404.1567(c), 416.967(c).

In formulating this RFC, the ALJ found the state agency medical and psychological consultants' opinions "persuasive in terms of a less than full range of medium work and mild to moderate mental limitations," including because they were "consistent with the radiological imaging, physical examination findings, and mental status examinations."  (R. 34.)  However, the ALJ did further limit Plaintiff "to simple routine and repetitive tasks that were not performed at a fast production rate pace, such as that found in assembly-line work due to her low energy and motivation as identified by

her moderate limitation in concentration, persistence, or maintaining pace" and "mild" instead of "no limitation in the understand, remember, or apply information."  (R. 34.) As discussed in more detail in Section III, the ALJ found a Medical Source Statement ("MSS") completed in July 2021 by Plaintiff's treating psychotherapist, Lydia Walker-Thoennes, MA, LPCC, not persuasive (R. 33-34) and also found the intensity, persistence, and limiting effects of Plaintiff's symptoms "inconsistent with the objective medical evidence of record that established the claimant was capable of performing a modified range of simple, medium exertional work" (R. 24).

The ALJ then found that Plaintiff could not perform her past relevant work as a nurse assistant with this RFC.  (R. 34-35.)  The ALJ found at step five that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that she could perform, such as an industrial cleaner (Dictionary of Occupational Titles ("DOT") code 381.687-018, medium, unskilled, SVP 2); day worker (DOT code 301.687-014, medium, unskilled, SVP 2); and stores laborer (DOT code 922.687-058, medium, unskilled, SVP 2).  (R. 35-36.)  The ALJ therefore found Plaintiff not disabled and denied disability insurance benefits, disabled widow's benefits, and supplemental security income.  (R. 36.)

## II.    LEGAL STANDARD

Judicial review of an ALJ's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's

decision results from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086, 1089 (8th Cir. 2018).  As defined by the Supreme Court:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence . . . is more than a mere scintilla.  It means— and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (marks and citations omitted).

"[T]his court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it."  *Nash*, 907 F.3d at 1089 (marks and citation omitted).  "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome."  *Id.*  "In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the [ALJ], the Court must affirm the decision."  *Jacob R. v. Saul*, No. 19-CV-2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) (citing *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992)).

The Court has reviewed the entire record and will incorporate discussion of the record as necessary to explain this Order.

## III.   DISCUSSION

Plaintiff contends that the ALJ erred (1) "by failing to properly evaluate the opinions of Plaintiff's treating therapist consistent with [Social Security Administration]

authority and Eighth Circuit precedent" and (2) "fail[ing] to account in the RFC for the 'total limiting effects' of Plaintiff's physical impairments [sic] Plaintiff's degenerative joint disease of the bilateral hip and lumbar osteoarthritis." (Dkt. 21 at 1.) She asks the Court to reverse the ALJ's decision and remand the case for further proceedings. (*Id.* at 25.) The Court addresses both issues below.

## A.     Weight Assigned to Plaintiff's Treating Therapist

Plaintiff's therapist, Ms. Walker-Thoennes, completed an MSS regarding Plaintiff's psychological condition. (R. 956-59.) The MSS has a signature date of July 2, 2021 (R. 959), but also indicates Ms. Walker-Thoennes' last contact with Plaintiff was on July 16, 2021 (R. 956). She opined that Plaintiff was markedly limited in the following areas of mental work-related functioning:

- Understand and remember short and simple, and detailed, instructions;
- Carry out detailed instructions;
- Maintain attention and concentration for more than two-hour segments;
- Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Make simple work-related decisions;
- Interact appropriately with the general public;
- Accept instructions and respond appropriately to criticism from supervisors;
- Travel in unfamiliar places or use public transportation; and
- Tolerate normal levels of stress.

(R. 957.) The MSS defines "[m]arked" limitations within the context of a productive level of functioning at work or in a home environment, assuming a normally competitive work environment and full-time work schedule, as "serious limitation in this area," where

"[t]here is substantial loss in the ability to function independently, appropriately, and effectively on a sustained basis." (R. 956-57.)

Ms. Walker-Thoennes opined that Plaintiff struggled to hear and understand verbal instructions, and struggled with high anxiety over whether she was doing something correctly, which increased when faced with decisions. (R. 957.) She further opined that when Plaintiff was in pain from walking, standing, and carrying basic light items, she became irritable and obstinate. (R. 957.) Ms. Walker-Thoennes opined that Plaintiff had "struggled to get along with supervisors & some co-workers every [sic] job." (R. 957.) She also opined that Plaintiff would require unscheduled breaks during an 8-hour workday in addition to the standard 15-minute morning and afternoon breaks due to hip and back pain and inability to stand; Plaintiff's impairments, in combination, were likely to produce "good" and "bad" days, and she would likely be absent from work more than 3 days per month; Plaintiff had a minimal capacity to adapt to changes in the environment or demands that were not already part of her daily life; and Plaintiff's depression levels could vary. (R. 958.) According to Ms. Walker-Thoennes, when Plaintiff's "depression is more severe [Plaintiff] doesn't leave bed most of the day" and "[t]his happens at least once per week with psychiatric medication." (R. 958.) She further opined that Plaintiff consumes alcohol "frequently but not in large quantities" and that Plaintiff "reports an increase in alcohol consumption post-onset of depression & anxiety," but "has gone periods of time without drinking & symptoms remain." (R. 959.)

The ALJ was required to explain how he considered the supportability and consistency factors when evaluating the persuasiveness of Ms. Walker-Thoennes'

medical opinion.  *See Shannan G. v. Kijakazi*, No. 22-CV-1895 (NEB/ECW), 2023 WL 4707843, at *14 (D. Minn. June 27, 2023) ("[A]n ALJ must explain how [supportability and consistency] were considered in determining the persuasiveness of a medical opinion.") (cleaned up), *R. & R. adopted*, 2023 WL 4704588 (D. Minn. July 24, 2023). The Social Security Administration describes supportability and consistency as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

"Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation."  Revisions to Rules, 82 Fed. Reg. at 5853, 2017 WL 168819 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim."  Revisions to Rules, 82 Fed. Reg. at 5853, 2017 WL 168819; *see also* 20 C.F.R. § 404.1520c(c)(2), 416.920c(c)(2).  An "ALJ is not required to explain the remaining factors [set forth in 20 C.F.R. § 404.1520c and § 416.920c] unless the ALJ 'find[s] that two or more medical opinions . . .  about the same issue are both equally well supported . . . and consistent with the record . . . but are

not exactly the same.'" *Jane D. v. Kijakazi*, No. 20-CV-1278 (MJD/KMM), 2021 WL 5360450, at *5 (D. Minn. Oct. 26, 2021) (quoting 20 C.F.R. § 404.1520c(b)(2)-(3)), *R. & R. adopted*, 2021 WL 5358569 (D. Minn. Nov. 17, 2021).

Turning to the ALJ's opinion, the ALJ began by noting that Plaintiff "did not seek out mental health treatment until mid-January 2020, which was 8½ months" after the amended onset date. (R. 28.) The ALJ then summarized Plaintiff's mental health treatment from January 2020 to October 2021. (R. 28-32.)

The ALJ summarized Plaintiff's treatment in relevant part as follows: "The totality of the claimant's mental health medical evidence showed her symptomology lower[ed] once she began psychotherapy and taking prescribed psychotropic medication." (R. 32.) The ALJ acknowledged Plaintiff "had a few bouts of increased symptomology with situational stressors" but found "[a]s a whole, no more than moderate symptomology and functional limitations resulted as demonstrated by her self-reported PHQ-9 scores, mental status exam findings, activities of daily living, and psychotherapy notes." (R. 32.) The ALJ stated, "[g]iven her complaints of difficulty with energy and motivation, the undersigned found the claimant had moderate limitation in the Part 'B' criteria of concentrate, persist, or maintain pace," and found she "was capable of performing simple, routine and repetitive tasks that were not performed at a fast production rate pace, such as that found in assembly-line work." (R. 32.) The ALJ also found Plaintiff's "active daily routine was inconsistent with her subjective complaints, but consistent with the [RFC]" because "[s]he was independent in self-care and grooming, and lived with a roommate and intermittently with her oldest adult-aged daughter so shared responsibility for

9

performing routine household chores such as bill paying, laundry, light cleaning, pet care, quick meal preparation, and shopping." (R. 32.) The ALJ noted Plaintiff's testimony that "her roommate carried the laundry basket, as it was too heavy for her carry to the laundry room," and that Plaintiff "crocheted, cross-stitched, drove, read, visited with family and friends, and watched television." (R. 32.)

As to Ms. Walker-Thoennes' July 2021 MSS, the ALJ found her opinions not persuasive because:

> While the record demonstrated persistent depressive symptoms, the claimant testified that her primary concern was physical in terms of returning to work. She reported getting a response to her treatment with Ms. Walker Thoennes. Psychological evaluations and mental status exams did not document ongoing marked difficulties in terms of her overall mental functioning. The opinion appeared largely based on the claimant's subjective complaints, as Ms. Walker Thoennes documented in the treatment note dated July 16, 2021, the claimant "shared about her daily function and why she feels she cannot work." (Exhibit 14F30) Furthermore, when seen on June 24, 2021, the claimant re-iterated a prior complaint from late May 2021 of discord with her roommate because she had not made herself available to run his errands and engaging in lots of negative self-talk for not being productive due to having no motivation. (Exhibits 14F25 and 28)

(R. 33-34.)

Plaintiff challenges the ALJ's statement that she testified that her primary concern was physical in returning to work. (Dkt. 21 at 9-10.) Plaintiff suggests that the ALJ framed this line of questioning to cause her to only reference her physical ailments. (*Id.* at 10.) The Commissioner responds that the ALJ reasonably interpreted Plaintiff's testimony, which focused on her physical limitations and included her statements that depression and anxiety would "sometimes" keep her from going to work and that her

depression and anxiety were "better than . . . in the past" because she had found a good treatment provider (Ms. Walker-Thoennes).  (Dkt. 24 at 15-16.)

The Court has carefully reviewed Plaintiff's testimony.  The ALJ initially questioned Plaintiff about her issues when working as a Certified Nursing Assistant ("CNA"), which were migraines and back pain, and then asked her, "[a]t this time, what would keep you from going back to work?"  (R. 55.)  Plaintiff responded with "those things" and then also described problems arising from her hearing and communication abilities when working as a CNA.  (R. 55-57.)  The ALJ then asked her, if she "were offered a different type of job that didn't require you to communicate as you would do as a CNA, what types of problems do you think you might have?"  (R. 57.)  Plaintiff identified standing for long periods of time.  (R. 57.)  The ALJ then asked about her back and Plaintiff testified about back symptoms that arose when doing chores.  (R. 58; *see also* R. 58-62 (describing back exercises and treatment, hip issues, and ability to stand, along with history of back pain when working as a CNA).)  Finally, the ALJ asked if there were "any other medical problems that you're having, issues that haven't been discussed that would make working difficult."  (R. 62.)  Plaintiff responded:

> Oh no, No, I have the depression and anxiety, and sometimes that would keep me from going to work, where I just couldn't make myself get up in the morning to go to work. That -- of course, that's a problem.

(R. 62.)

Plaintiff emphasizes this statement in her brief.  (Dkt. 21 at 10.)  But Plaintiff ignores the fact that when the ALJ asked if Plaintiff's depression and anxiety were better, worse, or about the same as in the past, Plaintiff testified: "It's better than it was in the

past because I finally got somebody who . . . helps me." (R. 63.) She then clarified that the "somebody" was Ms. Walker-Thoennes, described her as "fabulous" and "so helpful," and explained how Ms. Walker-Thoennes helped her. (R. 63-64.) Given Plaintiff's testimony about her improvement since she began therapy with Ms. Walker-Thoennes and her focus on physical concerns during the hearing, substantial evidence supports the ALJ's conclusion that Plaintiff's "primary concern was physical in terms of returning to work." (R. 34.)

Plaintiff next challenges the ALJ's statement that she was getting a response to Ms. Walker-Thoennes' treatment, claims the ALJ ignored the connection between her physical and mental health, and argues that the ALJ's reliance on her testimony is "misplaced and inapt." (Dkt. 21 at 10.) However, more than Plaintiff's testimony supports the ALJ's conclusion that Plaintiff was responding to treatment. As the ALJ stated, during a November 6, 2020 follow-up visit, a nurse practitioner noted that "[Plaintiff] has been feeling well on vraylar[3], much improved decision-making, 'I don't just sit there and get stuck in thinking about doing something, I just get up and do it,'" and recommended continuing the medication and therapy as scheduled. (R. 933, 936; *see also* R. 31 (ALJ's discussion of statement).) The ALJ also relied on Plaintiff's February 18, 2021 diagnostic assessment "to update her diagnosis, make treatment recommendations, and determine if individual psychotherapy remains an appropriate

---

[3]   Plaintiff was prescribed Vraylar on October 20, 2020. (R. 943.) Vraylar, or cariprazine, is a drug used to treat major depressive disorder among other things. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7318333/ (last visited Feb. 20, 2024).

service." (R. 1021-22.)  While Plaintiff continued to endorse symptoms of depression and anxiety at the assessment, she reported that "working with a therapist and her doctor for medication has helped reduce her depressive symptoms and helped her identify she struggles with daily uncontrollable anxiety," "for a few years she barely left her bed and her apartment, but now she leaves as needed" (but not often due to the Covid-19 pandemic), and "she no longer feels trapped in her home and enjoys getting up to do things on her good days." (R. 1021-22; *see* R. 31 (ALJ's discussion).)  This constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff responded well to treatment.  Indeed, Ms. Walker-Thoennes noted in the MSS that Plaintiff "reported some relief from psychiatric symptoms with treatment but not complete relief."  (R. 956.)

Plaintiff criticizes the ALJ's reliance on mental status exams that did not document marked difficulties in overall functioning, arguing the ALJ "selectively cited to benign examination findings" and ignored the fact that "mental impairments by their very nature wax and wane."  (Dkt. 21 at 10.)  Plaintiff further argues that Ms. Walker-Thoennes both acknowledged Plaintiff's improvements and nonetheless found she was markedly limited in multiple functional areas.  (Dkt. 21 at 10-11.)  The Commissioner responds: "The fact that the bulk of mental status examinations resulted in normal findings is well documented throughout the ALJ's decision and record" and argues that Plaintiff is "encourag[ing] an alternative interpretation of the record and ignor[ing] the standard of review, which mandates that, so long as substantial evidence supports the ALJ's findings, the presence of contrary evidence—even if it is also substantial—does not imply error by the ALJ."  (Dkt. 24 at 16 (citations omitted).)

The Court has reviewed the record and finds substantial evidence supports the ALJ's conclusion that "[p]sychological evaluations and mental status exams did not document ongoing marked difficulties in terms of [Plaintiff's] overall mental functioning." (R. 34.) Plaintiff identified treatment records describing her symptoms of anxiety and depression, beginning with an office visit with a nurse practitioner on January 21, 2020, as consistent with and supporting Ms. Walker-Thoennes' opinions. (Dkt. 21 at 13-15 (citing R. 725, 727, 730, 732-33, 757, 761, 770-71, 785, 789, 942-43, 1021-22).) As to Plaintiff's exam findings during the January 21, 2020 visit with the nurse practitioner, she had normal findings as to eye contact, dress (clean and casual), grooming, manner, attentiveness, motor skills, and speech. (R. 761.) Her affect was stable with a constricted range and blunted intensity, with an "I don't care" mood. (R. 761.) Her thought content included "death wishes, depressive cognitions," but she denied an active plan for harming herself or others; her thought process was logical and goal directed; she reported olfactory hallucinations; and she had average intellect with limited insight/judgment. (R. 761.) She was prescribed Bupropion[4] with directions to return in 1-2 months. (R. 762.)

While Plaintiff identifies several subsequent visits where she endorsed symptoms of depression and anxiety, her mental status exams and evaluations during those same visits resulted in normal or minimal findings. (*See, e.g.*, R. 789-91 (April 30, 2020 therapist visit noting "[Plaintiff] was open and cooperative" and "no concerns with

---

[4]      Buproprion is a medication used to treat depression. https://www.ncbi.nlm.nih.gov/books/NBK470212/ (last visited Feb. 20, 2024).

cognition, orientation, perception, judgement [sic], or insight," although suicidal ideation was 4 out of 10); R. 785-86 (June 26, 2020 therapist visit noting Plaintiff was cooperative, informed clinician when she needed to speak up, and "no concerns with cognition, orientation, perception, judgment, or insight," where suicidal ideation was 1 out of 10); R. 730-35 (July 30, 2020 telehealth visit with primary care provider noting: "[A]lert and cooperative; anxious mood; normal attention span and concentration. speech [within normal limits]; thoughts negative for [suicidal ideation/homicidal ideation], delusions" and "[t]houghts coherent, logical and goal-directed.  Insight/ judgement [sic] aware of illness."); R. 769-71 (August 24, 2020 therapist visit noting: "Client was cooperative and informed clinician when they needed to speak louder to be heard properly.  There were no concerns with cognition, orientation, perception, judgement [sic], or insight.  [Suicidal ideation] 1 out of 10.")); R. 725-29 (September 15, 2020 primary care visit noting: "[A]lert and cooperative; anxious, frustrated mood; normal attention span and concentration. speech [within normal limits]; thoughts negative for [suicidal ideation/homicidal ideation], delusions.  Thoughts coherent, logical and goal-directed.  Insight/judgement [sic] aware of illness."); R. 938-43 (October 20, 2020 annual exam with primary care provider noting "[A]lert and cooperative; depressed mood; normal attention span and concentration. speech [within normal limits]; thoughts negative for [suicidal ideation/homicidal ideation], delusions.  Thoughts coherent, logical and goal-directed.  Insight/judgement [sic] aware of illness."); R. 1021-28 (February 18, 2021 assessment noting "unremarkable" mental status exam with a narrative of: "[Plaintiff's]

MSE unremarkable.  She recognized most thinking errors; however, reporting lacking motivation to address them.  Her affect was appropriate during the interview.").)

Additional objective findings relied on by the Commissioner similarly showed normal or mostly normal mental status exam results.  (*See, e.g.*, R. 28-32 (citing R. 802 (January 28, 2020 visit noting: "[Plaintiff] appeared her stated age.  She was appropriately dress[ed], well groomed, appropriate speech and behavior.  Instead of her usual flat affect she showed more emotional range than she has in the past with more energy.  She smiled, laughed, and talked animatedly with her hands.  There were no concerns with cognition, orientation, perception, judgement [sic], or insight. [Suicidal ideation] 0 out of 10.")), R. 754 (February 25, 2020 visit to primary care provider noting generally normal mental status exam including "coherent, logical, goal directed" thought processes, although limited insight/judgment, constricted range, neutral affect, depressive cognitions, and a "don't care" mood), R. 982 (March 9, 2021 primary care visit noting "[A]lert and cooperative; normal mood; normal attention span and concentration.  speech [within normal limits]; thoughts negative for [suicidal ideation/homicidal ideation], delusions.  Thoughts coherent, logical and goal-directed.  Insight/judgement [sic] aware of illness."), R. 989 (June 1, 2021 noting :"[A]lert and cooperative; normal mood; normal attention span and concentration.  speech [within normal limits]; thoughts negative for [suicidal ideation/homicidal ideation], delusions.  Thoughts coherent, logical and goal-directed.  Insight/judgement [sic] aware of illness."), R. 1001 (August 30, 2021 primary care visit noting: "[A]lert and cooperative; depressed mood, flat affect and calm motor activity; normal attention span and concentration. speech [within normal limits]; thoughts

negative for [suicidal ideation/homicidal ideation], delusions.  Thoughts coherent, logical and goal-directed.  Insight/judgement [sic] aware of illness.").)  In view of these examination findings throughout the alleged disability period, the Court finds substantial evidence supports the ALJ's decision to discount Ms. Walker-Thoennes' opinions as inconsistent with her own exam findings as well as other providers' mental status exam and evaluation findings.

Finally, Plaintiff challenges the ALJ's statement that Ms. Walker-Thoennes' opinions were largely based on Plaintiff's subjective complaints.  (Dkt. 21 at 11.)  To the extent Plaintiff challenges the ALJ's reliance on a July 16, 2021 treatment note because the MSS had a signature block dated July 2, 2021 (Dkt. 21 at 11-12 (citing R. 959)), as the Commissioner points out, Ms. Walker-Thoennes stated in the MSS that her last contact with Plaintiff was on July 16, 2021 (Dkt. 24 at 16-17 (R. 956)).  Although the reason for the July 2, 2021 date is unknown, the Court finds no error in the ALJ's reliance on the July 16, 2021 treatment note given Ms. Walker-Thoennes' identification of July 16, 2021 as the date she last had contact with Plaintiff.

Moreover, Plaintiff does not explain how Ms. Walker-Thoennes could have formed opinions as to the interaction between Plaintiff's physical and mental health other than by relying on Plaintiff's reports.  Instead, Plaintiff argues that she had to "discuss her daily functioning, and how it relates to her ability to work" because her treatment "included her processing the decision to quit working and pursue disability."  (Dkt. 21 at 11.)  Plaintiff argues "the ALJ did not identify any indicia of improper or inappropriate reliance on Plaintiff's subjective complaints by [Ms.] Walker-Thoennes."  (*Id.* at 12.)

But in *Ryan v. Commissioner of Social Security*, relied on by Plaintiff, the treating physician relied on his own "clinical observations" when forming his opinions, which were documented in the record.  528 F.3d 1194, 1199-200 (9th Cir. 2008).  Here, Plaintiff has not identified any mental status exam or evaluation results that Ms. Walker-Thoennes relied on to support her opinions.  The absence of objective medical evidence supporting a medical source's opinions is properly considered under the supportability factor.  *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("On the supportability prong, see 20 C.F.R. § 404.1520c(c)(1), the ALJ found that Dr. Addison-Brown relied heavily on the claimant's subjective description of her symptoms and limitations.  While Dr. Addison-Brown conducted some diagnostic procedures during her evaluation, Dr. Addison-Brown's report states that at least some of her diagnoses were based on self-reports, which supports the ALJ's finding.") (cleaned up).

The Court also finds unpersuasive Plaintiff's argument that Ms. Walker-Thoennes recognized Plaintiff's improvement but still imposed marked limitations.  (Dkt. 21 at 11 (citing R. 958).)  Ms. Walker-Thoennes recognized Plaintiff was experiencing some but not complete relief (R. 956) but then stated: "[Plaintiff] struggles with depression which levels can vary.  When depression is more severe [Plaintiff] doesn't leave bed most of the day.  This happens at least once per week with psychiatric medication" (R. 958).  Ms. Walker-Thoennes did not cite to any of her own records (or any other medical records) supporting this assertion, and Plaintiff has not identified anything in the record that would support Ms. Walker-Thoennes' statement that once a week, even when taking

18

medication, Plaintiff did not leave her bed most of the day.  The Court is not persuaded that the ALJ should have found Ms. Walker-Thoennes' opinions more persuasive because she recognized Plaintiff's improvement, nor is the Court persuaded that the record is consistent with and supports her opinions.

Finally, Plaintiff argues that "error is shown, and remand required, simply by showing that [the ALJ's] finding that Ms. Walker-Thoennes' opinion is unpersuasive is not based on a reasonable or logical interpretation of the record." (Dkt. 21 at 15.)  To the extent Plaintiff relies on treatment records, as discussed above, numerous mental status exam findings and evaluations do not support and are inconsistent with Ms. Walker-Thoennes' opinions.  And to the extent Plaintiff relies on her November 19, 2020 Function Report (*see* Dkt. 21 at 12-13 (citing Function Report at R. 463-70)), the ALJ acknowledged her reports but ultimately concluded that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (R. 24).  The ALJ's decision to discount Plaintiff's reported symptoms as to her depression and anxiety as inconsistent with the record, including the objective findings and Plaintiff's own reports of improvement, is supported by substantial evidence.

In sum, the Court finds that substantial evidence in the record as a whole supports the ALJ's decision to discount Ms. Walker-Thoennes' opinions in view of the objective medical evidence, as well as evidence of Plaintiff's improvement due to therapy and medication.  "An ALJ's reasoning need only be clear enough to allow for appropriate judicial review."  *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) (cleaned up).

Here, the ALJ's opinion thoroughly summarized Plaintiff's mental health symptoms and treatment and explained why Ms. Walker-Thoennes' opinions were inconsistent with and not supported by the evidence of record in a manner that this reviewing court can understand. Because the ALJ's assessment of the persuasiveness of those opinions is supported by substantial evidence, remand is not required with respect to the mental limitations in the RFC.

**B.      Effect of Plaintiff's Degenerative Joint Disease of the Bilateral Hip and Lumbar Osteoarthritis.**

Plaintiff also argues that the ALJ's decision to discount the symptoms arising from her hip and back impairments is not supported by substantial evidence and that the RFC requires additional and significant functional limitations. (Dkt. 21 at 16-24.) Plaintiff describes her limitations as her back seizing up with "even a little bend at the waist" (including when washing dishes), needing to lean against a fence or sit on a rock if she walks more than 1.5 blocks due to back and hip pain, struggling to climb bleachers, and an inability to stand for more than 10-15 minutes. (*Id.* at 20.) According to Plaintiff, these "self-described limitations do not nearly approximate the ability to perform the arduous demands of medium work, yet that is apparently what the ALJ is claiming." (*Id.* at 21.) The Commissioner responds that the ALJ concluded that Plaintiff's statements were inconsistent with the objective medical evidence and other evidence of record and that the evidence considered by the ALJ was proper. (Dkt. 24 at 7-10.)

"Using the *Polaski* factors, subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Bryant v. Colvin*, 861 F.3d 779, 782 (8th

Cir. 2017) (cleaned up) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting an ALJ must consider *Polaski* factors before discounting any subjective complaints)). "In addition to the claimant's prior work record, the *Polaski* factors include (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Id.* (citing *Polaski*, 739 F2d at 1322, and 20 C.F.R. § 404.1529).

The regulations direct the ALJ to consider all of the available evidence from medical sources and nonmedical sources about how a claimant's symptoms affect them; medical opinions; objective medical evidence; and other evidence, including prior work record, the claimant's statements about their symptoms, evidence submitted by medical sources, and observations by Social Security Administration employees and other persons. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). Relevant factors set forth in the regulations include: a claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3).

Here, the ALJ summarized Plaintiff's medical treatment for her back and hips and

then found:

> Evidence of record established the claimant treated her back and hip pain
> with over-the-counter analgesics and wearing supportive footwear, and never
> followed up on referrals for more intensive alternative conservative
> treatments like cortisone injection, diclofenac gel, or physical therapy. At the
> hearing, she also testified she did some back exercises. Her failure to follow-
> up with the alternative conservative treatments suggested she was satisfied
> with the level of pain relief she received from over-the-counter analgesics,
> exercises, and wearing supportive footwear and/or the level of limitation
> resulting was not as debilitating as claimed.
>
> Considering the minimal findings found on radiological imaging given her
> age and recent physical examination findings that revealed only limited
> active range of motion in the hips due to tenderness and intermittent flares of
> back pain, the undersigned concluded the claimant was capable of
> performing medium exertional work (i.e., lifting, carrying, pulling, and/or
> pushing up to 25 pounds frequently and 50 pounds occasionally, and sitting,
> standing, and walking for up to 6 hours each per 8-hour workday with normal
> breaks).

(R. 27.)

Plaintiff did not challenge the ALJ's findings as to treatment, examination results,

or imaging.  Instead, Plaintiff challenges the ALJ's reliance on her activities of daily

living and the fact that she did not seek other work after she could no longer work as a

CNA when discounting her symptoms.  (Dkt. 21 at 21-23 (citing R. 32).)

The Commissioner argues:

> Although activities such as light housework and visiting with family are not
> alone sufficient to prove a claimant can work, the extent of Plaintiff's
> activities when considered in conjunction with the medical record in this
> case, suggested a greater degree of functioning than alleged in pursuit of
> benefits and supports the ALJ's decision.

(Dkt. 24 at 10.)  As to Plaintiff's work history, the Commissioner argues that the ALJ was entitled to consider Plaintiff's work as a CNA and failure to attempt alternative jobs prior to applying for disability benefits as "part of a larger picture that showed Plaintiff was more capable than she alleged."  (*Id.* at 11.)  According to the Commissioner, "[w]hile an ALJ can consider work history, there is no requirement that he must simply accept a claimant's subjective reports because of a good work history and ignore the other factors set forth in 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p."  (*Id.*)

As a starting point, the Court rejects any suggestion that the ALJ's conclusion as to Plaintiff's symptoms was based exclusively on her activities of daily living and work history.  Rather, the ALJ clearly identified the reasons why he did not believe her limitations were "as debilitating as claimed."  (R. 27.)  The ALJ identified Plaintiff's conservative treatment with over-the-counter pain medication, supportive footwear, and at-home exercises, as well as the fact that she declined cortisone injections,[5] diclofenac gel,[6] and physical therapy.  (R. 27; *see also* R. 26 (citing 3F18 (R. 738), 8F26 (R. 927), 8F30 (R. 931 (referring Plaintiff to "physical medicine" and rehab for evaluation of cortisone or physical therapy; Plaintiff declined diclofenac gel in favor of

---

[5]     Cortisone shots are injections that can help relieve pain, swelling and irritation in a specific area of your body.  https://www.mayoclinic.org/tests-procedures/cortisone-shots/about/pac-20384794#:~:text=Cortisone%20shots%20are%20injections%20that,might%20benefit%20from%20cortisone%20shots (last visited Feb. 20, 2024).

    "Diclofenac is used to treat pain and other symptoms of arthritis of the joints (eg, osteoarthritis), such as inflammation, swelling, stiffness, and joint pain." https://www.mayoclinic.org/drugs-supplements/diclofenac-topical-application-route/side-effects/drg-20063434?p=1 (last visited Feb. 20, 2024).

acetaminophen)).)  The ALJ also relied on "minimal findings found on radiological imaging" (R. 27)—a conclusion not challenged by Plaintiff.  The ALJ also noted that Plaintiff did not seek medical attention for low back pain until June 8, 2020, "approximately fourteen months" after the amended onset date.  (R. 26.)  The ALJ also noted fairly normal objective tests, including results from a January 11, 2021 consultative exam that:

> [S]he was able to walk normally across the room without the use of an assistive device but had mild difficulty tandem walking and moderate difficulty squatting. There was mild-to-moderate tenderness at the left lower back but normal range of motion. (Exhibit 7F3) Straight leg raising and Romberg were negative and she was neurologically intact. (Exhibits 7F3-4)

(R. 27.)

Testing on June 15, 2021 "revealed her passive range of motion of the bilaterally [sic] hips was intact but active range of motion was limited by tenderness" and "[s]trength was equal bilaterally with no focal deficits and normal gait."  (R. 27 (citing 13F15 (R. 989)).)  The ALJ further noted a normal physical exam on July 27, 2021 and the same a month later, on August 30, 2021, with a normal gait.  (R. 27 (citing 13F21 (R. 995) and 13F27 (R. 1001)).)

The Court recognizes that "'the ability to do activities such as light housework and visiting with friends' alone [is] insufficient reason to discredit [a claimant's] subjective complaints."  *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (quoting *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996)).  But those activities, in addition to the evidence discussed above, may further support the ALJ's decision.  *See id.*

As to Plaintiff's work history, neither party provided any case law specific to the issue of how an ALJ should treat a lengthy work history in one position when a claimant did not seek alternative work after she could no longer work in that role. Regardless, even if the ALJ had, and the Court does, consider Plaintiff's lengthy work history as supporting her credibility, this does not undermine the ALJ's reliance on Plaintiff's conservative treatment and failure to seek alternative treatment, minimal findings on exam, and minimal findings on radiological imaging when concluding that "the level of limitation resulting was not as debilitating as claimed." (R. 27.) These constitute "a good reason" for discounting Plaintiff's symptoms, and the Court will defer to the ALJ's judgment. *See Milam*, 794 F.3d at 985 ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to [their] judgment even if every factor is not discussed in depth.").

Finally, the fact that Plaintiff did not seek medical attention for her pain until several months after her alleged onset date undermines her claims of disability beginning April 1, 2019. *See Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) ("Further, Wright's complaints of disabling pain are also undercut by the eight-month period during which he sought no medical care."); *Milam*, 794 F.3d at 985 (finding failure to seek any medical treatment for back pain "for long periods of time," including "the nearly *four years* between September 2007 and June 2011 . . . notwithstanding her assertion that she actually became disabled in August 2009" undermined subjective complaints).

The Court may not reverse an ALJ's decision supported by substantial evidence even if the Court would reach a different conclusion as to Plaintiff's ability to engage in

medium work and even if substantial evidence supports a contrary outcome.  *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007).  Again, the ALJ's reasoning is clear enough that the Court can understand it.  *See Grindley*, 9 F.4th at 631.  Having found the ALJ's decision to discount Plaintiff's subjective complaints supported by substantial evidence, the Court rejects Plaintiff's challenge to the RFC on that ground.

* * *

For all these reasons, the Court denies Plaintiff's request for remand of the Commissioner's decision and grants the Commissioner's request that the decision be affirmed.

## IV.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Plaintiff's request for remand of the Commissioner's decision (Dkt. 21) is **DENIED**;

2.    The Commissioner's request that the Court affirm the Commissioner's decision (Dkt. 24) is **GRANTED**; and

3.    The Announcement of Decision scheduled for February 23, 2024 at 10:00 a.m. is **CANCELLED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED:  February 20, 2024                    *s/Elizabeth Cowan Wright*
                                             ELIZABETH COWAN WRIGHT
                                             United States Magistrate Judge